91 F.3d 150
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jose Lester ANGULO-ESCOBAR, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70077.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 14, 1996.
Decided July 12, 1996.
 
 1
 Before: SCHROEDER and HAWKINS, Circuit Judges, and FITZGERALD,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Jose Lester Angulo-Escobar, a native and citizen of Nicaragua, petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming an Immigration Judge's ("IJ") order that denied his applications for asylum and withholding of deportation. We have jurisdiction under 8 U.S.C. § 1105a(a). Based on the evidence in this record, we grant the petition.
 
 
 4
 Asylum applicants claiming a well-founded fear of future persecution must demonstrate that their fear of persecution is genuine and reasonable. See Ramos-Vasquez v. INS, 57 F.3d 857, 862 (9th Cir.1995).
 
 
 5
 We review for substantial evidence the BIA's factual findings underlying its decision concerning an applicant's eligibility for asylum. Id. at 861. We will reverse the BIA's decision only if the applicant presents evidence that is "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).
 
 
 6
 Angulo-Escobar contends that the BIA's decision finding him statutorily ineligible for asylum based upon his failure to establish an objective fear of persecution is not supported by substantial evidence. This contention has merit.[1]
 
 
 7
 Here, the BIA relied on a State Department letter dated January 9, 1991, to conclude that the change of government in Nicaragua removed the likelihood that Angulo-Escobar would be persecuted by the Sandinistas if he returned to Nicaragua. The BIA also found that Angulo-Escobar did not demonstrate that the Sandinistas persecuted former Contras after April, 1990.
 
 
 8
 Angulo-Escobar, however, presented evidence of conditions in Nicaragua from July, 1990 to March, 1991 to substantiate his claim that the changed political circumstances did not obviate his fear of persecution by the Sandinistas. He testified that the Sandinistas continued to persecute their political opponents after the Chamorro government took office on April 25, 1990.[2] Specifically, Angulo-Escobar testified that, in February, 1991, the Sandinistas assassinated Enrique Bermudez, a former Contra leader, and that they killed fourteen unarmed Contras returning to Nicaragua from Honduras. Angulo-Escobar also testified that the Sandinistas learned he was a Contra and that, following their discovery, they came frequently to his father's farm looking for him. Angulo-Escobar testified that the Sandinistas continued searching for him at his father's farm even after he left Nicaragua in 1989, and that his father warned him in a telephone conversation in March, 1991, not to return to Nicaragua because the Sandinistas could still retaliate against him for his prior membership with the Contras.
 
 
 9
 Angulo-Escobar also introduced documentary evidence to demonstrate that his fear of persecution was objectively well-founded. Angulo-Escobar produced several newspaper articles from July, 1990 to January, 1991, which indicated that the Sandinistas still controlled the police and army after April 25, 1990. Angulo-Escobar also produced an excerpt from a February, 1991 State Department country report on human rights in Nicaragua. The excerpt revealed, inter alia, that the Sandinistas continued to carry out politically motivated killings and beatings of former Contras even after they were removed from government. The excerpt also revealed that the Chamorro government did not effectively remedy these human rights violations.
 
 
 10
 In sum, Angulo-Escobar's uncontroverted testimony and documentary evidence constitutes compelling evidence demonstrating that "a reasonable factfinder would have to conclude that the requisite fear of persecution existed." See Elias-Zacarias, 502 U.S. at 481. The record in this case indicates that, shortly after the change of government in Nicaragua, the Sandinistas continued to (1) exercise considerable control over the army and police; (2) persecute their political adversaries; and (3) possess a particular interest in locating Angulo-Escobar.
 
 
 11
 Because the evidence in this record compels the conclusion that Angulo-Escobar's fear of persecution by the Sandinistas was objectively well-founded, the BIA's contrary conclusion is not supported by substantial evidence. See id.; Ramos-Vasquez, 57 F.3d at 861. Accordingly, we remand to the BIA to determine whether Angulo-Escobar is entitled to asylum as a matter of discretion. See Aguilera-Cota v. INS, 914 F.2d 1375, 1384 (9th Cir.1990).[3]
 
 
 12
 PETITION FOR REVIEW GRANTED.
 
 
 
 *
 Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We do not address the BIA's finding that Angulo-Escobar did not suffer past persecution and that he was ineligible for withholding of deportation, because Angulo-Escobar has not raised these issues in his petition
 
 
 [2]
 Because the BIA did not disturb the IJ's favorable credibility determination, we accept the truth of Angulo-Escobar's testimony to determine whether he is statutorily eligible for asylum. See Singh v. Ilchert, 63 F.3d 1501, 1506 (9th Cir.1995)
 
 
 [3]
 Because we find that Angulo-Escobar is statutorily eligible for asylum, we do not address his contention that the BIA erred by failing to apply a rebuttable presumption that his fear of persecution was objectively well-founded